UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv387-RJC-DCK

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, Plaintiff, <br><br> v. <br><br> CAPITALSTREET FINANCIAL, LLC & SEAN F. MESCALL, Defendants, and <br><br> GERALD T. MESCALL & GAINCAPITAL, INC., Relief Defendants. | ORDER |

**THIS MATTER** is before the Court on a show cause hearing held on May 24, 2010. For the reasons stated below, the Court finds the defendant Sean F. Mescall in civil contempt of court and refers this matter to the United States Attorney for consideration of prosecution of criminal contempt.

I. **FINDINGS OF FACT**

The United States Commodity Futures Trading Commission ("CFTC") brought this lawsuit against Mescall, Capitalstreet Financial, LLC, and additional relief defendants under its authority to enforce anti-fraud provisions of the Commodity Exchange Act, as amended, 7 U.S.C. § 1 et seq. (the "Act"), relating to options trading on foreign currency exchange ("forex") markets. Essentially, the CFTC alleges that Mescall and others working under his direction fraudulently solicited $1.3 million from investors in a forex "ponzi" scheme, keeping more than $875,000 of the total investment for personal use. On September 9, 2009, the Court granted the CFTC's ex parte motion for a temporary restraining order, also referred to as a Statutory Restraining Order ("SRO"), prohibiting Mescall from withdrawing assets held in the name of the defendants and relief

defendants, including funds held at bank accounts and other financial institutions. (Doc. No. 8). A hearing was held several days later on September 16, 2009, where the Court issued a Preliminary Injunction pending the outcome of this litigation. (Doc. No. 14). As it is relevant here, the Preliminary Injunction: (1) appoints Joseph W. Grier, III, as temporary receiver for the defendants and relief defendants; (2) commands Mescall to transfer to Grier all of the defendants' and relief defendants' assets, other than real property, located outside of the United States; and (3) deliver to Grier all passwords or information necessary to secure access to the defendants' and relief defendants' bank accounts. (Id. ¶ 19, 28 & 31). Moreover, the Preliminary Injunction continues the SRO by prohibiting Mescall from withdrawing funds from bank accounts maintained outside of the United States. (Id. ¶ 16). As of the present date, the receiver has been able to recover and secure approximately $319,000 in assets.

On September 29, 2009, after the Court issued the Preliminary Injunction, Mescall gave a deposition conducted by the CFTC. During the deposition, Mescall told the CFTC that he owned and controlled a business entity known as Patrick Fitzgerald Financial, Inc. ("Fitzgerald"). Mescall advised that he had opened a bank account in the name of Fitzgerald with FBME Bank Ltd. ("FBME"), a bank operating in the country of Cyprus, and deposited $50,000 in the account. Mescall further advised that he understood the FBME account to be "frozen" by the Court's Preliminary Injunction.

In November of 2009, Mescall violated the Preliminary Injunction by withdrawing $49,665.28 from the FBME account and failing to transfer those funds to the receiver. After learning of the withdrawal, the plaintiff and receiver jointly filed a motion on December 18, 2009, later amended on March 9, 2010, to hold Mescall in contempt of court. (Doc. Nos. 25 & 35). On May 12, 2010, the Court issued an Order for the defendant to appear and show cause why he should not be

held in civil contempt (Doc. No. 43), and a show cause hearing was held on May 24, 2010. At the hearing, the CFTC presented document evidence of the withdrawal. Bank records show a facsimile sent by Mescall to FBME dated October 16, 2009, requesting to close his account, and a check issued by FBME to Mescall on November 4, 2009, in the amount of $49,665.28. The CFTC also presented a copy of the actual check issued to Mescall, which bears his signature. The receiver then credibly testified that although he has made considerable effort to locate and secure the FBME assets, he has yet to do so and the status of the funds remains unknown. Mescall appeared at the hearing and was questioned by the CFTC as an adverse witness, refusing to answer nearly all questions under an asserted Fifth Amendment privilege against self-incrimination. When given the opportunity to present evidence, Mescall did not attempt to rebut the evidence of contempt presented by the CFTC.

## II.  DISCUSSION

The party moving for a finding of civil contempt has the initial burden of showing by clear and convincing evidence: (1) the existence of a valid order of which the alleged contemnor had actual or constructive knowledge; (2) that the order was in the moving party's favor; (3) that the alleged contemnor has violated the terms of the order by his conduct and has at least constructive knowledge of this violation; and (4) that the moving party has been harmed by the contempt. Ashcroft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000). Intent is largely irrelevant to a finding of civil contempt; the Court focuses only on whether in fact the alleged contemnor's conduct complied with some "unequivocal command" set forth in specific detail in the Order. In re Gen. Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995) (citation omitted); accord Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990) ("[T]he focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with

the order, but whether in fact their conduct complied with the order at issue."). As such, a finding of contempt may be appropriate even where the acts in violation of the order were done innocently or inadvertently. See Gen. Motors, 61 F.3d at 258.

If the moving party makes a prima facie showing of these elements, the burden shifts to alleged contemnor to justify his non-compliance. See United States v. Rylander, 460 U.S. 752, 757 (1983); Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 740 (11th Cir. 2006). Recognized defenses to civil contempt include: (1) a good-faith attempt to comply with the court's order; (2) substantial compliance; and (3) an inability to comply. Consolidated Coal Co. v. United Mine Workers of Am., 683 F.2d 827, 832 (4th Cir. 1982) (citations omitted).

### A. Mescall is in Contempt of the Court's Preliminary Injunction

The CFTC has established each element of a prima facie case for contempt by clear and convincing evidence. The Preliminary Injunction is a valid order issued by the Court that is sufficiently broad to cover the FBME account and sufficiently clear to put Mescall on notice that withdrawal of these funds was prohibited. Mescall's own prior deposition testimony confirms his understanding that the Court's Preliminary Injunction froze these assets and prohibited their withdrawal. The CFTC has presented substantial evidence documenting Mescall's unauthorized withdrawal of these funds in clear violation of the Court's Preliminary Injunction. Adherence to the Preliminary Injunction is essential to the preservation of the defendants' and relief defendants' assets pending the outcome of this litigation. This is especially true in light of the fact that the receiver has only been able to recover approximately $319,000 in assets. Thus, $50,000 is a substantial portion of the assets at stake in this litigation, and Mescall's unauthorized withdrawal of these funds and continued non-compliance with the Court's Preliminary Injunction has materially harmed the CFTC.

Moreover, Mescall's repeated assertion of his Fifth Amendment privilege during the hearing

is not a valid defense to contempt. Although Mescall's Fifth Amendment privilege may have been a valid ground to refuse to answer certain questions, "it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production" necessary to rebut prima facie evidence of contempt. Rylander, 460 U.S. at 758; accord United States v. Butler, 211 F.3d 826, 832 (4th Cir. 2000). Mescall thus failed to offer any evidence justifying his conductor otherwise rebutting the CFTC's prima facie case. Accordingly, the Court finds Mescall in contempt of court.

    **B.    Civil Contempt Sanctions are an Inappropriate Remedy**

The Court has both an inherent and a statutory power to enforce compliance with its orders and may exercise that authority by ordering Mescall incarcerated until he purges himself of his contempt. See Shillitani v. United States, 384 U.S. 364, 370 (1966); In re Runnels, 815 F.2d 969, 970-71 (4th Cir. 1987); 18 U.S.C. § 401(3). If it appeared likely that incarcerating Mescall would produce his compliance with the Preliminary Injunction, the Court would do so readily. The Court is not left with the belief, however, that the FBME funds remain in Mescall's possession, and that if incarcerated he would be able to purge his contempt by transferring those funds to the receiver. See Rylander, 460 U.S. at 757 ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."). In this scenario, a contempt sanction of incarceration would become punitive in nature and, as a result, more appropriate upon a finding of criminal contempt. See City of Richmond Black Police Officers Ass'n v. City of Richmond, 548 F.2d 123, 125 (4th Cir. 1977). As an interested party to this civil litigation, the CFTC cannot prosecute a charge of criminal contempt. See Young v. Vuitton et Fils, S.A., 481 U.S. 787, 803-07 (1987); Fed. R. Crim. P. 42(a)(2). Thus, the Court finds it appropriate to stay any sanction imposed pursuant to its finding of civil contempt and refer the matter to the United States Attorney for consideration of prosecution of criminal contempt after due notice. Upon motion by

5

the United States Attorney, the Court will initiate criminal contempt proceedings pursuant to Fed. R. Crim. P. 42(a) and appoint counsel for the defendant.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the defendant Sean F. Mescall is hereby found in contempt of the Court's Preliminary Injunction issued September 16, 2009. The Court stays the imposition of civil contempt sanctions on the defendant and refers the matter to the United States Attorney for consideration of prosecution of criminal contempt. The Clerk shall direct a copy of this Order and a transcript of the show cause hearing held May 24, 2010, to the United States Attorney's Office for the Western District of North Carolina.

Signed: May 25, 2010

Robert J. Conrad, Jr.
Chief United States District Judge