UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv387-RJC-DCK

| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) |  |
|---|---|---|
| Plaintiff, | ) ) |  |
| v. | ) ) | ORDER |
| CAPITALSTREET FINANCIAL, LLC & SEAN F. MESCALL, | ) ) ) |  |
| Defendants, and | ) ) |  |
| GERALD T. MESCALL & GAINCAPITAL, INC., | ) ) ) |  |
| Relief Defendants. | ) ) |  |

**THIS MATTER** is before the Court on the receiver's motion for approval of proposed distribution scheme and other relief. (Doc. No. 46).

On September 9, 2009, the plaintiff U.S. Commodity Futures Trading Commission (the "Commission") filed a complaint pursuant to anti-fraud provisions of the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.*, naming Capitalstreet Financial, LLC ("Capitalstreet") and Sean F. Mescall as defendants, and Gerald T. Mescall and Gaincapital, Inc. as relief defendants. (Doc. No. 1). The complaint alleges that CapitalStreet was fraudulently operated as a "Ponzi" scheme. On September 16, 2009, the Court entered a preliminary injunction freezing all the defendants' and relief defendants' assets and appointed the receiver to assume control of those assets. (Doc. No. 14). Since that date, the receiver has worked actively to marshal and liquidate the defendants' and relief defendants' assets (collectively, the "Receivership Estate"). By the instant motion, the receiver seeks the Court's approval of his proposed distribution priority scheme and claims procedures, as well as approval of the "net investment" distribution method. Additionally, the receiver seeks approval of his intent to file tax returns with federal and state taxing authorities, and a declaratory judgment

stating that the receiver is exempt from preparing tax returns or paying taxes on behalf of the defendants or relief defendants.

On May 20, 2010, the receiver served notice of this motion to all parties to the lawsuit; any known investors and creditors of Capitalstreet; the Internal Revenue Service; the United States Attorney's Office for the Western District of North Carolina; the North Carolina Department of Revenue; and the North Carolina Attorney General. (Doc. No. 48). The time for filing objections to the receiver's motion has since passed and no objections have been filed.

Having considered the receiver's motion and the entire record in this case, the Court finds that the rights of the defendant's investors and creditors would be adequately protected by the receiver's proposed distribution priority scheme and claims procedures. Further, the receiver's proposed "net investment" distribution method appears to be the most equitable method of distributing the receivership assets among Capitalstreet's investors, as it accurately treats investors' withdrawals as redistributed capital, rather than true "profits" gained from investment. See Commodity Futures Trading Comm'n v. Franklin, 652 F. Supp. 163, 167-170 (W.D. Va. 1986), rev'd on other grounds sub nom. Anderson v. Stephens, 875 F.2d 76 (4th Cir. 1989). However, the Court will not issue what amounts to an advisory opinion approving the receiver's proposed tax treatment of the Receivership Estate.

**IT IS, THEREFORE, ORDERED** that the receiver's motion (Doc. No. 46) is:

1. **GRANTED IN PART** such that the claims submission, review and approval procedures, as well as the distribution of trust assets shall be administered by the receiver in accordance with the Attachment accompanying this Order; and

2. **DENIED IN PART** with respect to the receiver's motion for approval and declaratory relief regarding the tax treatment of the Receivership Estate.

**SO ORDERED**.

Signed: June 18, 2010

Robert J. Conrad, Jr.
Chief United States District Judge

ATTACHMENT—DISTRIBUTION PRIORITY SCHEME AND PROCEDURES FOR CLAIMS SUBMISSION, REVIEW AND APPROVAL

1. The Receivership Estate shall be distributed in the following order:

    A. To claims for expenses of the administration of the Receivership Estate, including legal and accounting fees; expenses to preserve the value of assets; and costs of realization and payment of any taxes due on property or income of property of the Receivership Estate incurred during the pendency of the receivership (the "Administrative Claimants");

    B. To the return of investments to Investors; and

    C. To any General Creditors, should any assets remain in the Receivership Estate.

2. The Receiver shall deliver the Notice and Claim Forms (Doc Nos. 46-1 & 46-2) to the appropriate parties without delay. Claims will be processed according to the following procedures:

    A. Because the Receiver does not anticipate that the assets in the Receivership Estate are sufficient to repay the Investors, General Creditors shall not submit claims to the Receiver. However, if it should appear to the Court that assets will remain in the Receivership Estate after distributions have been made to the Investors, the General Creditors shall be permitted to submit claims to the Receiver by further Order of the Court;

    B. All other claimants who wish to submit claims must submit a Claim Form within 30 days after receiving notice from the Receiver (the "Claims Bar Date"). The Claims Bar Date shall be prominently displayed on the Notice as well as the receivership website, www.grierlaw.com/CapitalStreet. The Receiver shall have authority to

extend the Claims Bar Date for individual claimants, for good cause, for as much as an additional 30 days. Any claimant who requests such an extension from the Receiver should do so in writing prior to the expiration of the Claims Bar Date. Claims submitted after the expiration of the applicable Claims Bar Date shall not be allowed and no distribution will be made on such claims;

C. Any Claim Form not properly substantiated with documents will be subject to objection by the receiver. However, to the extent that a claimant has already submitted substantiating documents to the Commission, that claimant need not resubmit such documents with the Claim Form;

D. Claim Forms must be signed so as to indicate that, to the best of the claimant's knowledge, the Claim Form is a true, correct, complete and accurate accounting according to the claimant's records; and

E. Claim Forms and documentation may be submitted to the Receiver by email at [capitalstreetreceivership@grierlaw.com](mailto:capitalstreetreceivership@grierlaw.com) or by mail addressed or hand delivered to: Capitalstreet Claims, Grier Furr & Crisp, PA, 101 N. Tryon Street, Suite 1240, Charlotte, NC 28246.

3. Once the Claims Bar Date has expired for all claimants, the Receiver will review each Claim Form and accompanying documentation and verify the amount of each claim in the following manner:

A. In the case of Investors, the Receiver shall calculate each purported Investor's claimed deposit amount and pre-receivership disbursement to arrive at amounts for each Investor's Total Investment and Total Withdrawals. The Receiver shall then compile an Investor Claims Report, outlining the Receiver's recommendation as to

each Investor's Total Investment and Total Withdrawals;

  B. In the case of Administrative Claimants, the Receiver shall review claims submitted by any purported Administrative Claimant's claim. The Receiver shall then and compile an Administrative Claimants Claims Report, outlining the Receiver's recommendation as to each Administrative Claimant's claim; and

  C. The Receiver shall then file with the Court and serve on all interested parties a copy of both reports (collectively, the "Claims Report"). To the extent that any claim is subject to an objection by the Receiver, the Claims Report will set forth the basis for the Receiver's objection. The Receiver may object to claims on any of the following grounds: (1) the claim was tardy; (2) the claim is not adequately documented; (3) the claim amount includes false profits; (4) the claim is not against Capitalstreet; (5) the claimant is not an Investor or Administrative Claimant; or (6) any other valid objection. To protect the privacy of the Investors, the Investor Claims Report will list Investors by Capitalstreet account numbers only.

4. The distribution method for Investors will be the "Net Investment" method. Investors shall receive a pro rata share of the Receivership Estate based upon each Investor's Net Investment. The Net Investment for each Investor shall be calculated by subtracting that Investor's Total Withdrawals from Total Investment.

5. Each Investor and Administrative Claimant will have the opportunity to object to all or any portion of the Claims Report filed by the Receiver, including that Investor's Total Investment and Total Withdrawals listed on the Claims Report, and respond to any objection made by the Receiver in the Claims Report. Objections and responses shall be made by a filing a written pleading with the Court and serving a copy on the Receiver. Any objections

or responses must be submitted within 30 days after the Claims Report is filed and served. The Receiver will attempt to negotiate in good faith with any objecting or responding Investor or Administrative Claimant. Objections that are not resolved through negotiations will be resolved by the Court.

5. The Court will issue an Order on the Claims Report which will reflect a final determination of the distributions owed to the Investors and Administrative Claimants. The Receiver will then distribute the Receivership Estate in accordance with the Court's Order.